United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JEWISH LEGAL NEWS, INC.,

Plaintiff,

v.

ALAMEDA UNIFIED SCHOOL
DISTRICT, et al.,

Defendants.

Case No.  25-cv-09505-SVK

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS**

Re: Dkt. No. 11

Jewish Legal News, Inc. ("JLN" or "Plaintiff") brings this action for alleged violations of its "right to receive information" under the First Amendment of the Constitution.  Dkt. 1 (the "Complaint").  Before the Court is Defendants' Alameda Unified School District ("AUSD") and Fremont Union High School District ("FUHSD") (collectively, "Defendants" or the "School Districts") motion to dismiss.  Dkt. 11 (the "Motion").  The matter came on for hearing on February 24, 2026.  Having considered the Parties' submissions and oral arguments, the relevant law and the record in this matter, the Court **GRANTS** Defendants' Motion.

I.      **BACKGROUND[1]**

Plaintiff is "a media organization that covers issues of antisemitism, free speech and educational policy[.] … [It] conducts public records requests and publishes articles on topics of interest to the Jewish community"  Dkt. 1, ¶¶ 2, 9.  Defendants AUSD and FUHSD are School Districts in the San Francisco Bay Area, encompassing three schools at issue here:  Alameda High School (AUSD), Homestead High School (FUHSD) and Fremont High School (FUHSD).  *Id.*, ¶¶

---

[1] The factual background herein is drawn from the Complaint.  *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (courts generally "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party.").

United States District Court
Northern District of California

2, 10-11, 20.

Non-party Luai Ahmed is an individual born in Sana'a, Yemen, in 1993. *Id.*, ¶ 13. In 2014, Mr. "Ahmed fled Yemen for Sweden as a refugee due to his sexual orientation, and the threat posed to him under Islamist rule in Yemen." *Id.*, ¶ 15. There, he "became a columnist for the newspaper Bulletin and a social-media influencer writing and speaking extensively about Islamist extremism, integration issues for immigrants, antisemitism, LGBTQ+ rights and Muslim-Jewish relations." *Id.*, ¶ 16.

Between about October 30, 2025 and November 4, 2025, "Mr. Ahmed was scheduled to speak at four Bay Area high schools," including the three schools at issue here. *Id.*, ¶ 20. Plaintiff alleges that the "talks were publicized by Jewish organizations," and that one of its correspondents "planned to report on each of these events, including by interviewing the students' reactions to the speaker, for publication in JLN." *Id.*, ¶ 21. However, Plaintiff alleges, "[d]ays before the scheduled events, each school announced cancellation or postponement of Mr. Ahmed's talk." *Id.*, ¶ 22. Plaintiff alleges that the cancellations[2] "turned on viewpoint" because they were "made in response to protest and pressure by advocacy groups that "disfavored" Mr. Ahmed's message. *Id.* 1, ¶¶ 1-2, 25. Plaintiff alleges that "the [S]chool [D]istricts agreed with that sentiment and/or capitulated to the pressure." *Id.*, ¶ 25.

On November 4, 2025, Plaintiff filed this action, alleging that the School Districts violated its First Amendment right to receive information. *See id.* The Complaint seeks, in relevant part:

    A. a declaration "that Defendants' cancellations of Mr. Ahmed's speaking engagements violated Plaintiff's First Amendment's right to receive information;"

    B. an injunction prohibiting "Defendants from denying access to speakers on the basis of viewpoint, and requiring that a speaker policy be applied neutrally and consistently;" and

---

[2] Although one of these events was postponed, rather than cancelled, Plaintiff's Complaint refers to the actions collectively as "cancellations," (*e.g.*, Dkt. 1, ¶¶ 1, 35). The Court likewise uses this shorthand to refer to the actions taken by the School Districts, because Plaintiff argues that it alleged "that 'postponement' functioned as cancellation because Ahmed was only in the region briefly and there is no likelihood of rescheduling," (Dkt. 13 at 12 (citing Dkt. 1, ¶¶ 2, 22, 26)) and, for the purposes of this Motion, the Court draws this inference in Plaintiff's favor.

C. nominal and compensatory damages to Plaintiff including for "the lost opportunity to attend, listen, conduct interviews, cover, and publish an article."

Dkt. 1 at Request for Relief.

On December 12, 2025, Defendants moved to dismiss.  Dkt. 11.  The Motion was fully briefed on December 31, 2025, and the matter came on for hearing on February 24, 2026.  *See* Dkts. 13, 15, 27.  All parties have consented to magistrate-judge jurisdiction.  Dkts. 12, 16.

## II.     LEGAL STANDARD

### A.     Eleventh Amendment Immunity

The Eleventh Amendment provides that the "Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend XI.  "Though its precise terms bar only federal jurisdiction over suits brought against one State by citizens of another State or foreign state," courts have "long recognized" that the Eleventh Amendment also bars suits brought against a State by its own citizens, under principles of sovereign immunity."  *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 669-70 (1999) ("This has been our understanding of the Amendment since the landmark case of *Hans v. Louisiana,* 134 U.S. 1 [] (1890).").  A Plaintiff can "sue[] a state official alleging a violation of federal law, [and] the federal court may award an injunction that governs the official's future conduct," under *Ex parte Young.  See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984) (citing, *inter alia*, *Ex parte Young*, 209 U.S. 123 (1908)).  However, a state itself and "agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court."  *In re Lazar*, 237 F.3d 967, 975 (9th Cir. 2001).

### B.     Rule 12(b)(1) – Subject Matter Jurisdiction

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) tests whether the court has subject matter jurisdiction."  *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 900 (N.D. Cal. 2020).  "[L]ack of Article III standing requires dismissal for want of subject matter jurisdiction under Rule 12(b)(1)."  *Id.*  "A Rule 12(b)(1) jurisdictional attack may be facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a "facial"

United States District Court
Northern District of California

12(b)(1) challenge, as is presented here, the Court assumes a plaintiff's factual allegations to be true and draws all reasonable inferences in plaintiff's favor. *Oracle Corp. v. ORG Structure Innovations LLC*, No. 11-cv-3549 SBA, 2012 WL 12951187, at *3 (N.D. Cal. Mar. 30, 2012) (citing *Doe v. See*, 557 F.3d 1066, 1073 (9th Cir. 2009)).

### C.    Rule 12(b)(6) – Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) authorizes a district court to dismiss a complaint if it fails to state a claim upon which relief can be granted.  In ruling on a motion to dismiss, a court may consider only "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).  Courts generally "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031.  However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## III.    DISCUSSION

Defendants bring several challenges to Plaintiff's Complaint.  Defendants argue:  (1) that AUSD and FUHSD are arms of the State of California and thus immune from suit for damages under the Eleventh Amendment;  (2) that Plaintiff lacks standing to bring this suit;  and (3) that "Plaintiff has also failed to plead facts supporting a prima facie case of any First Amendment violation."  Dkt. 11.

The Court "begin[s]—and end[s]—[its] analysis on the first two grounds." *Stockton v. Brown*, 152 F.4th 1124, 1135 (9th Cir. 2025).  Because the Court concludes that Plaintiff's claim is barred based on Eleventh Amendment[3] and Article III standing grounds, it cannot reach the merits of the Plaintiff's constitutional challenge. *Id.*

////

---

[3] Although a "federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction)…[, it] has leeway to choose among threshold grounds for denying audience to a case on the merits." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007).

United States District Court
Northern District of California

United States District Court
Northern District of California

**A.    The Eleventh Amendment Forecloses Plaintiff's Claims for Damages**

The Ninth Circuit has affirmed that, as organized under California law, school districts are "arm[s] of the State partaking of the State's Eleventh Amendment immunity." *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 928 (9th Cir. 2017). Defendants argue that, under the Eleventh Amendment, "AUSD and FUHSD are, therefore, entitled to dismissal of Plaintiff's sole cause of action with prejudice insofar as Plaintiff seeks monetary damages." Plaintiff does not dispute that the School Districts are arms of the State and that compensatory damages are thus unavailable against Defendants. *See* Dkt. 13 at 8-9. However, Plaintiff contends that "nominal damages are available" under the Eleventh Amendment. *Id.* The Court disagrees. As explained below, Plaintiff can neither recover damages from nor be awarded injunctive relief against an agency of the state, unless the agency has waived its sovereign immunity.

"[U]nder the eleventh amendment, agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court." *In re Lazar*, 237 F.3d at 975 (emphasis added). As undisputed arms of the State of California, AUSD and FHUSD benefit from such immunity. *E.g.*, *Collins v. San Francisco Unified Sch. Dist.*, No. 21-CV-02272-HSG, 2021 WL 3616775, at *2 (N.D. Cal. Aug. 16, 2021) (dismissing "all claims against SFUSD" under Eleventh Amendment immunity); *Laird v. United Tchrs. Los Angeles*, 615 F. Supp. 3d 1171, 1181 (C.D. Cal. 2022), *aff'd,* No. 22-55780, 2023 WL 6970171 (9th Cir. Oct. 23, 2023) (dismissing all claims against LAUSD on Eleventh Amendment grounds, as opposed to claims against the Attorney General which were dismissed for lack of standing). However, "a State may waive its sovereign immunity by consenting to suit." *Coll. Sav. Bank*, 527 U.S. at 670.

As relevant here, sovereign immunity "may be forfeited where the state fails to assert it; [it] may be viewed as an affirmative defense." *In re Bliemeister*, 296 F.3d 858, 861 (9th Cir. 2002). "California may therefor[e] waive its Eleventh Amendment immunity on a case-by-case basis." *Katz v. Regents of the Univ. of California*, 229 F.3d 831, 834 (9th Cir. 2000). Indeed, courts need not "raise the [Eleventh Amendment] defect on its own. Unless the State raises the matter, a court can ignore it." *Id.*

Defendants moved to dismiss the Complaint and sought sovereign immunity only "insofar

United States District Court
Northern District of California

as Plaintiff seeks monetary damages." Dkt. 11 at 10. Defendants also explicitly stated that "Sovereign Immunity does not prohibit Plaintiff from seeking prospective injunctive relief against Defendants." *Id.* at 12. These statements are unequivocal and therefore the Court concludes that Defendants have waived their sovereign immunity insofar as it relates to injunctive relief. *See* Dkt. 11 at 10. This conclusion is further bolstered by Defendants' submission of a reply that was silent as to total immunity despite the Parties' argument over and examination of pertinent authorities such as *Sato*, *Collins* and *Mitchell*, (*see* Dkt. 15 at 4-5) and by not raising the issue at oral argument. *Cf. In re Bliemeister*, 296 F.3d at 862 (comparing two extremes, *Hill v. Blind Indus. & Servs.*, 179 F.3d 754, 760 (9th Cir. 1999), *amended by* 201 F.3d 1186 (9th Cir. 2000) (waiver) and *Mitchell v. Franchise Tax Bd.*, 209 F.3d 1111, 1115 (9th Cir.2000) (no waiver), and discussing various actions the State had taken in each case). Each of these actions suggest an intentional waiver – perhaps to test the primary argument that Plaintiff lacks standing to pursue its claim for injunctive relief (discussed by the Court in section III.B., below).

As to the issue of nominal damages (for which there has been no waiver), Plaintiff is incorrect as a matter of law. In the Ninth Circuit, nominal damages—like other damages—are barred by the Eleventh Amendment. *E.g.*, *Laird*, 615 F. Supp. 3d at 1181 (rejecting the contentions that a plaintiff could "maintain his suit against the District to seek nominal damages, '[b]ecause sovereign immunity only applies to actual monetary payment sought from the state to provide actual compensation for measurable injuries.'" (citing *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1022 (9th Cir. 2010) as "recogniz[ing] that, absent a waiver, sovereign immunity bars suits seeking nominal damages against a public school district.")). Indeed, "nominal damages are a form of retrospective relief." *Laird*, 615 F. Supp. 3d at 1182.

Accordingly, the Court **DISMISSES** Plaintiff's claim **with prejudice** insofar as it seek monetary damages, whether compensatory, nominal or otherwise.

////

////

////

////

United States District Court
Northern District of California

**B.      Plaintiff Lacks Article III Standing to Pursue this Action**

As to Plaintiff's claim for injunctive relief, Defendants argue Plaintiff lacks standing to pursue the claim. Dkt. 11 at 10-14. Article III standing requires claimants satisfy three elements:

> (1) the plaintiff suffered an "injury in fact" that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "The party invoking federal jurisdiction bears the burden of establishing these [standing] elements." *Id.* at 561. Defendants challenge the first and third requirements for Article III standing. First, they argue that Plaintiff cannot show it its injury is "concrete and particularized" because its "right to receive information" claim is too attenuated. Dkt. 11 at 10-12. Second, Defendants argue that Plaintiff's harm cannot be redressed by the injunctive relief it seeks (and, as noted, its requests for damages are barred). *Id.* at 12-14. The Court addresses each of these requirements in turn.

**1.      Plaintiff's Alleged Injury Under the Right to Receive Information Fails Because It Lacks a "Concrete, Specific Connection" to the Speaker**

The Parties agree, and the Court concurs, "that freedom of speech 'necessarily protects the right to receive'" "information and ideas." *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 757 (1976); *compare* Dkt. 13 at 9-10 *with* Dkt. 15 at 6-7. However, unlike when a party asserts its own right to speak under the First Amendment, "[a] precondition of asserting this 'right to receive,' … is the existence of a 'willing speaker.'" *Pennsylvania Fam. Inst., Inc. v. Black*, 489 F.3d 156, 165 (3d Cir. 2007) (quoting *Virginia State Bd. of Pharmacy*, 425 U.S. at 756. Thus, as the courts of appeals have stated, "the right to receive speech is 'entirely derivative' of the rights of the speaker." *Stockton v. Brown*, 152 F.4th 1124, 1147 (9th Cir. 2025) (quoting *Pennsylvania Fam. Inst.*, 489 F.3d at 165 (3d. Cir.) and *In re Application of Dow Jones & Co., Inc.*, 842 F.2d 603, 608 (2d Cir. 1988)). Here, Plaintiff asserts an injury to its right to receive information from, *i.e.*, the "right to listen" to[4], the speaker Mr.

---

[4] The Supreme Court's cases use the "right to receive information" and the "right to listen" interchangeably. *Compare, e.g.*, *Virginia State Bd. of Pharmacy*, 425 U.S. at [CONTINUED]

Ahmed. *See, generally*, Dkts. 1, 13.

The Court assumes *arguendo* that Mr. Ahmed was and is a willing speaker[5] and addresses Defendants' principle challenge to Plaintiff's claimed injury: Plaintiff is not the direct recipient of Mr. Ahmed's speech and is too far removed from the speech to claim a concrete injury. Dkt. 11 at 6, 10-12 (*e.g.*, "This suit is not brought by Mr. Ahmed [(the speaker)], nor is this suit brought by students or staff who invited Mr. Ahmed [(the direct recipients of Mr. Ahmed's speech)]. [JLN is] a news organization that claims it planned to cover Mr. Ahmed's three appearances and write an article about Mr. Ahmed's message and student reactions to that message."). For the following reasons, the Court agrees.

The right to receive information is always "entirely derivative" of the right of the speaker to speak. *Stockton*, 152 F.4th at 1147. Accordingly, the Court agrees with Plaintiff that there is nothing that would *categorically* bar a news organization, or any second-degree recipient, from challenging the (alleged) censorship of speech. Rather, as the Supreme Court made clear in *Murthy v. Missouri*, a "'right to listen' theory" may be viable "where the listener has a concrete, specific connection to the speaker." 603 U.S. 43, 75 (2024). In particular, *Murthy* cautioned against permitting "plaintiffs [to] assert injuries" based merely on "an interest in reading and engaging with content of other speakers on social media. … Th[e] Court has 'never accepted such a boundless theory of standing.'" *Id.* at 74-75. Thus, Plaintiff must allege and identify a "concrete, specific connection" to Mr. Ahmed. *Id.*

Two examples help guide the Court's analysis. First, in *Kleindienst v. Mandel*, the Supreme Court "agreed that a group of professors had a First Amendment interest in challenging the visa denial of a person they had invited to speak at a conference." *Id.* (characterizing *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972)). Unlike in *Mandel*, however, Plaintiff did not

---

756-57 (right to receive) *and Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972) (same) *with Murthy v. Missouri*, 603 U.S. 43, 74-76 (2024) (right to listen). This Court similarly uses the terms interchangeably.

[5] There is a dispute, addressed briefly by the Parties, as to whether the "willing speaker" requirement is satisfied. Although Mr. Ahmed was certainly "willing" when student groups invited him to speak on campus, Defendants argue that he "is no longer available to speak" because he is no longer in the region. Dkt. 15 at 7; *see also* Dkt. 13 at 10. The Court need not resolve this dispute, because it finds that Plaintiff lacks standing regardless.

invite Mr. Ahmed – Plaintiff merely intended to report on the speech and, specifically, "interview[] the students' reactions to the speaker."  Dkt. 1, ¶ 21.

Of greater assistance to the Court is the Ninth Circuit's recent decision in *Stockton v. Brown*.  152 F.4th 1124 (9th Cir. 2025), *petition for certiorari docketed,* no. 25-606 (Nov. 24, 2025).  There, the plaintiffs—several doctors, including Dr. Richard Eggleston, a non-profit corporation Children's Health Defense ("CHD") and a Washington resident and podcaster John Stockton—challenged the Washington Medical Commission's 2021 "guidance policy suggesting that the Commission would disciple physicians licensed in Washington who spread COVID-19 misinformation."  *Id.* at 1132-33.  The primary speaker was Dr. Eggleston, a retired ophthalmologist who was "an opinion writer for the *Lewiston Tribune*" and who wrote an editorial "expounding on his views of the dangers of the COVID-19 vaccine and his belief that ivermectin would soon be the standard of care for preventing and treating COVID-19."  *Id.* at 1133.  Other Plaintiffs asserted, *inter alia*, a First Amendment claim based on the "right to listen to views about COVID-19 that fall outside the mainstream," such as Dr. Eggleston's.  *Id.* at 1143.

The Ninth Circuit first affirmed the dismissal of the doctors' (including Dr. Eggleston's) claims on *Younger* abstention grounds.[6]  *Id.* at 1135-42.  "In light of [it]s conclusion regarding *Younger* abstention, … [the Ninth Circuit was] left with the question of whether Claim I as asserted by the remaining Plaintiffs was constitutionally ripe."[7]  *Id.* at 1143.  The Ninth Circuit examined, *inter alia*, the "right to listen" theory as it related to Mr. Stockton (the podcaster) and found standing to be lacking.  The Court explained, in relevant part:

> [T]he record shows only that Stockton is an avid reader of Dr. Eggleston's work, has hosted Dr. Eggleston on his podcast, and

---

[6] The *Younger* doctrine, named for *Younger v. Harris*, 401 U.S. 37, 91 (1971), requires courts to abstain from exercising jurisdiction where doing so "would have the practical effect of enjoining" state proceedings.  *See Stockton*, 152 F.4th at 1135-38.  In *Stockton*, there were "ongoing state civil proceedings—the disciplinary proceedings against Dr. Siler, Dr. Eggleston, and the Doe Doctors."  *Id.* at 1137-38.

[7] In *Stockton*, the Ninth Circuit framed the inquiry as one of "constitutional ripeness."  *Id.* at 1142. However, as the Court explained, "the constitutional component of ripeness is synonymous with the injury-in-fact prong of the standing inquiry."  *Id.*  The Court here casts the inquiry as one of standing, because that is how the inquiry was framed by the Parties;  nonetheless, "in this context, the constitutional ripeness and standing inquiries" are the same.  *Cf. id.* at n. 9.

> helped to connect Dr. Eggleston with Robert F. Kennedy, Jr. and CHD to bring this case. Although this evidence shows that Stockton had some connection with Dr. Eggleston, this does not rise to the requisite level for a constitutional injury-in-fact. ... [T]here is no suggestion, for example, that Stockton wished to have Dr. Eggleston on his podcast again but was prevented from doing so due to the proceedings against Dr. Eggleston. On the continuum from *Murthy* to *Mandel*, Stockton falls far closer to the insufficient showing in *Murthy*.

*Id.* at 1146 (internal citations omitted).

Here, the Court finds Plaintiff's allegations, even taken as true, similarly deficient. First, Plaintiff's general interest, even if its mission is to "cover[] issues of antisemitism, free speech and educational policy," (*see* Dkt. 1, ¶¶ 2, 9), is insufficient. An organization's "interest in another's speech" is not enough. *Stockton*, 152 F.4th at 1147-48 (rejecting this argument from CHD). Second, Plaintiff's allegation that it planned to "interview[] the students' reactions to the speaker" is not enough, as the Court finds it analogous to the level of connection between Mr. Stockton and Dr. Eggleston. Plaintiff's third allegation, which comes closest to the mark, is that it "sought to have its journalist attend, listen [and] write an article covering [Mr.] Ahmed's speeches scheduled at Defendants' schools." Dkt. 1, ¶ 37; *cf. Stockton*, 152 F.4th at 1146 (suggesting that a showing "that Mr. Stockton wished to have Dr. Eggleston on his podcast again but was prevented from doing so" might have been enough). However, Plaintiff's allegations as to its desire for its journalist to attend are entirely conclusory and speculative, particularly given that Defendants' public schools are limited public forums that allow access by third parties only with permission. Dkt. 11 at 13 (citing *DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.*, 196 F. 3d 958 (9th Cir. 1999) and Cal. Penal Code § 627 *et seq.*). Plaintiff makes no allegations that its journalist had actually sought or received such permission. *See* Dkt. 1.

Accordingly, "on the continuum from *Murthy* to *Mandel*" and taking the well-pleaded facts alleged by Plaintiff as true, the Court finds the Complaint deficient. Plaintiff has not alleged a sufficiently "concrete, specific connection to" Mr. Ahmed, as required to show an injury to its right to receive information. Indeed, Plaintiff's theory of injury would seemingly give any person who wished to speak to anyone who wanted to listen to Mr. Ahmed's speech standing. This Court heeds the Supreme Court's and Ninth Circuit's warning against such "startlingly broad" theories

10

of injury.  *See Murthy*, 603 U.S. at 75;  *Stockton*, 152 F.4th at 1146.  Defendants' Motion to Dismiss on this ground is **GRANTED**.

### 2.    Plaintiff's Injury, if Any, Is Not Redressable

Even assuming Plaintiff had alleged, or could allege, specific facts showing a concrete, specific connection to Mr. Ahmed, the Court agrees with Defendants that the injury as alleged is not redressable.  *See* Dkt. 11 at 12-14.

As to damages, Defendants are immune from suit under the Eleventh Amendment.  *See, supra*, § III.A.  Accordingly, the Court cannot redress Plaintiff's purported past injury of by way of compensation for, *e.g.*, lost value due to "the lost opportunity to attend, listen, conduct interviews, cover, and publish an article."  *Contra* Dkt. 1, Request for Relief C.

Plaintiff's future-facing relief runs into a different problem.  Plaintiff requests a declaration that the cancellations were unlawful and an injunction forcing Defendants to apply a viewpoint neutral speaker policy.  *Id.*, Requests for Relief A-B.  "To obtain forward-looking relief, the plaintiff[] must [allege] a substantial risk of *future* injury that is traceable to the Government defendants and likely to be redressed by an injunction against them."  *Murthy*, 603 U.S. at 69 (emphasis added).  Thus, to persuade the Court that its proposed injunction could redress the purported injury, Plaintiff would need to show "a real and immediate threat of repeated injury."  *Id.* at 44;  *see also id.* at 59 ("If the plaintiffs were seeking compensatory relief, the traceability of their past injuries would be the whole ball game.  But because the plaintiffs are seeking only forward-looking relief, the past injuries are relevant only for their predictive value.").

Here, the allegations of the Complaint are insufficient.  Plaintiff has not alleged, for example, that Mr. Ahmed is set to return to the Bay Area and intends to speak at the subject schools again.  *See* Dkt. 1.  Nor does Plaintiff allege that, if Mr. Ahmed were to be invited to speak again, that he would be prevented from doing so.  *Id.*  Indeed, at the hearing, Defendants explained their position that Mr. Ahmed's particular speaking engagements were cancelled not because of the viewpoints he intended to express, but because the "issue" was deemed "controversial" and thus under the School District's policy "needed to be presented in tandem with opposing viewpoints," *i.e.*, with an opposing speaker to speak alongside Mr. Ahmed.  Hearing re

United States District Court
Northern District of California

Motion to Dismiss (Feb. 24, 2026);  *see* Dkt. 27 (minute entry).  While Defendants' attack is "facial" and not "factual," this argument highlights the absence of any allegations in the Complaint to suggest that Mr. Ahmed would be prevented from speaking in the future under Defendants' existing policies.

Simply put, Plaintiff's forward-looking relief cannot redress its past (alleged) injury, and Plaintiff does not make any allegations to support "a real and immediate threat of repeated injury" so as to justify such relief.  Accordingly, Defendants' Motion to Dismiss is also **GRANTED** on this ground.

### C.    The Court Does Not Reach the Merits

Plaintiff has not established standing to seek an injunction or declaratory relief against the Defendants.  The Court "therefore lack[s] jurisdiction to reach the merits of the dispute." *Murthy*, 603 U.S. at 56.  Thus, the Court does not address Defendants' Rule 12(b)(6) argument.

### D.    Amendment of the Complaint Would Be Futile

Finally, the Court determines whether to grant leave to amend.  Where a court finds that dismissal is warranted, it should ordinarily "grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).

Defendants are entitled to immunity as to Plaintiff's claim insofar as it seeks damages.  Accordingly, any attempt to amend with regard to damages would be futile.  As for forward-looking relief, the Court dismisses the claim for lack of standing on two grounds – lack of a "concrete and particularized" injury and failure to show redressability.  On the first ground, the Court finds that any attempt to amend would be futile.  Plaintiff's general interest and student-reaction allegations are legally insufficient under *Stockton*.  *See, supra*, § III.B.1. Any allegation that Plaintiff's journalist would in fact have attended and reported on Mr. Ahmed's speeches is too speculative given the limited-access nature of public schools and the entirely hypothetical nature of whether Plaintiff's journalist would have received permission.  On the second ground, the Court is similarly convinced that it would be futile for Plaintiff to attempt to allege a "real and immediate threat of repeated injury" with regard to a future speech my Mr. Ahmed.  As Mr.

United States District Court
Northern District of California

12

United States District Court
Northern District of California

Ahmed travels and lives abroad, any attempt to do so would be too speculative and hypothetical survive. Accordingly, because the Court finds that Plaintiff's allegations as to redressability cannot be cured, the Court **denies leave to amend.**

IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED** and the Complaint is **DISMISSED without leave to amend.**

**SO ORDERED.**

Dated: March 3, 2026

_____
SUSAN VAN KEULEN
United States Magistrate Judge

13